**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Case No. 25-cr-00076-JMC** |
| | **:** | |
| **CORTNEY MERRITTS,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

## GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT CERTAIN EVIDENCE

Motions *in limine* are "designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Graves v. District of Columbia*, 850 F.Supp.2d 6, 10 (D.D.C. 2011) (internal citations omitted). Accordingly, consistent with governing law, and to promote efficiency at trial, the United States of America respectfully moves *in limine* for a pretrial order (1) finding authentic the government's self-authenticating business records and documents pursuant to Federal Rules of Evidence 902(1), (11), and (13); and (2) admitting certain summary testimony and exhibits pursuant to Federal Rule of Evidence 1006. In support of its motion, the United States relies on the following points and authorities, and such other points and authorities as may be cited at a hearing on this motion.

### ISSUES AND ANALYSIS

**A.    Self-Authenticating Records and Documents Are Admissible Pursuant to Federal Rule of Evidence 902**

To authenticate a document, such as an email or other record, the proponent "must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). The threshold for authenticity is "not high," and the proponent is not required to "rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *United States v. Hassanshahi*, 195 F. Supp. 3d 35, 48 (D.D.C.

2016) (citations and quotation marks omitted); *see also United States v. Safavian*, 435 F. Supp.2d 36, 39 (D.D.C. 2006) ("The Court need not find that the emails are necessarily what the proponent claims, only that there is evidence sufficient for the jury to make such a finding.") (citation omitted). The authenticity of this evidence that the government intends to introduce can be readily established by testimony of a law enforcement agent with knowledge of the collection process. *See Braswell v. United States*, 487 U.S. 99, 119 (1988) (explaining that the government may authenticate records through testimony "establishing that the corporation produced the records subpoenaed" and the "jury may draw from the corporation's act of production the conclusion that the records in question are authentic" and "produced in response to the subpoena"). Evidence may also be self-authenticating, requiring no extrinsic evidence of authenticity. *See* Fed. R. Evid. 902.

The government intends to admit certain self-authenticating business records during its case-in-chief. The Federal Rules of Evidence allow for business records to be admitted in evidence at trial without a custodian of records testifying to their authenticity. *See id.* 902(11). The same is true for certain documents that are signed and bear a seal of the United States or a department, agency, or officer thereof, *see id.* 902(1), and certified records generated by an electronic process or system, *see id.* 902(13).[1] Therefore, this pleading formally provides notice of the government's intent to use certain sealed and signed records pursuant to Rule 902(1), and declarations pursuant to Rules 902(11) and (13), and seeks a pretrial ruling as to the authenticity of those records and declarations.[2]

---

[1] This Court may also find records authentic that do not fall squarely into any of these rules. *See* Fed. R. Evid. 104(a) (preliminary questions concerning the admissibility of evidence shall be determined by the Court, and in making such determinations courts are "not bound by the rules of evidence" (except those with respect to privileges)).

[2] Here, as the rules allow, the government intends to admit the certified records themselves and not the declarations. And, regardless of the way it was authenticated, ultimately questions about the authenticity of evidence go to the weight the jury should give the evidence, not its admissibility.

Specifically, the government intends to introduce at trial certain official certified records obtained from the United States of America, Department of the Treasury, Internal Revenue Service, pertaining to Defendant's tax filings during the relevant time period, to include, *inter alia*, Certifications of Lack of Records. Such signed and sealed records are self-authenticating under Rule 902(1).[3] Copies of the uncertified records that the government has already obtained from the IRS have been provided in discovery. The government intends to request official certified copies of those documents from the IRS, and will provide them in discovery upon receipt.

As to Rules 902(11) and (13), the government's trial exhibits may include business records and documents from the following individuals and entities[4]:

Cash App
DocuSign, Inc.
Facebook
Navy Federal Credit Union
Onfido
Pack & Load Services Inc.
Penske
Prestamos CDFI
Ryder
TaskRabbit
Thumbtack, Inc.
U-Haul
United States Small Business Administration
Vetted Courier and Logistics
Yelp Inc.

---

*See Hassanshahi*, 195 F. Supp. 3d at 48 ("The ultimate resolution of the evidence's authenticity is reserved for the jury.").

[3] They are also admissible under Federal Rule of Evidence 404(b), for the reasons previously stated by the government in its Notice of Intent to Introduce Other Acts Evidence Under Fed. R. Evid. 404(b). ECF No. 20 at 7-10.

[4] The underlying records and documents the government has received from these entities have been provided in discovery, as have all declarations of authenticity received to date. The government intends to obtain any missing declarations from these entities, and will provide them in discovery upon receipt.

As relevant to the business records described above, it is well-established that such documents can also be readily authenticated using certifications complying with Federal Rule of Evidence 902. *United States v. Foster*, No. 1:20-cr-186, 2024 U.S. Dist. LEXIS 8123, at *5-9 (N.D. Ohio Jan. 17, 2024) (finding records self-authenticating under Federal Rules of Evidence 902(11) and 902(13) where accompanied by certifications "signed by a custodian of the record" that "provide that the records were made at or near the time of each act, that they were made as a regular practice, and that the records were kept in the course of regularly conducted business activity"); *see also United States v. Edwards*, No. 11-129-1, 2012 U.S. Dist. LEXIS 163044, at *7 (D.D.C. Nov. 15, 2012) (finding business records self-authenticating where supported by certification of records custodian and holding that "[a]t least five separate Circuits have held that certifications used pursuant to Federal Rule of Evidence 902(11) to authenticate business records are not testimonial and can be used to lay a foundation for the admissibility of business records under Rule 803(6). The certifications merely establish the procedures through which the underlying records were made. The business records—not the certifications—are used to establish facts against the defendant at trial.").

Each of the above-detailed business record certifications complies with the dictates and furthers the judicial efficiency purposes of Federal Rule of Evidence 902 and easily meets the minimal requirements for authenticating certain pieces of evidence. Accordingly, the government requests a pretrial ruling as to the authenticity of these records.

### B.    Summary Testimony and Exhibits are Admissible Pursuant to Federal Rule of Evidence 1006

Some of the records collected during the investigation in this case are voluminous. Pursuant to Federal Rule of Evidence 1006, the government intends to introduce certain summary

4

exhibits derived from admissible evidence.  Specifically, the government intends to introduce the following summary exhibits:

- A table showing Defendant's NFCU banking activity for 2019, including, among other things, starting balance, money in, money out, ending balance, and average balance.

- A table showing Defendant's NFCU banking activity for 2020, including, among other things, starting balance, money in, money out, ending balance, and average balance.

- Spreadsheets breaking down Defendant's expenses by category for 2019, 2020, and 2021. For example, by "cash withdrawals," "food/restaurants," "hotels," and "moving supplies."

- A chart showing Defendant's NFCU account's daily balance from January 1, 2019, through July 11, 2022, and identifying the balances on the dates that Defendant submitted loan applications and received loan proceeds.

The summary charts the government intends to use at trial are based on voluminous admissible materials consisting of hundreds of pages of Defendant's bank records and hundreds upon hundreds of financial transactions.  Those records have been provided in discovery, and the proposed summary exhibits have also already been provided to the defense.[5]

The government's proposed summary exhibits are admissible charts summarizing "the content of voluminous writings . . . that cannot conveniently be examined in court."  As required by Fed. R. Evid. 1006, the charts must summarize documents so voluminous as to make comprehension "difficult and . . . inconvenient," although not necessarily "literally impossible"; the documents themselves must be admissible, although the offering party need not actually enter them; the party introducing the chart must make the underlying documents reasonably available for inspection and copying; and the chart must be "accurate and nonprejudicial."  *United States v. Bray*, 139 F.3d 1104, 1109–10 (6th Cir. 1998).  In addition, as part of the foundation for a chart,

---

[5] The government reserves the right to modify the summary exhibits prior to trial, and also to offer additional summaries and charts at trial.  The government will provide the defense with any modified or additional summary exhibits as soon as they are available.

the witness who prepared the chart should introduce it.  *Id*. at 1110; *see also United States v. Hemphill*, 514 F.3d 1350, 1358 (D.C. Cir. 2008).  "As long as a party has laid a foundation for the underlying documents, a chart summarizing them can itself be evidence under Rule 1006." *Hemphill*, 514 F.3d at 1358-59.

Accurate and nonprejudicial summaries "can help the jury organize and evaluate evidence which is factually complex and fragmentally revealed in the testimony of a multitude of witnesses [or documents] throughout the trial."  *United States v. Lemire*, 720 F.2d 1327, 1348 (D.C. Cir. 1983).  Summary exhibits admitted pursuant to Rule 1006 are substantive evidence and need no limiting instruction.  *See United States v. Abou-Khatwa*, 40 F.4th 666, 688 (D.C. Cir. 2022) (citing *Hemphill*, 514 F.3d at 1359; *Weaver*, 281 F.3d at 233; 2 MCCORMICK ON EVIDENCE § 241 (8th ed. 2020)).

Issues arising from the admission of summary exhibits almost always relate to the testimony about the exhibits, rather than the admissibility of the exhibits themselves:

> [T]here are strict limits on the role of summary witnesses.  The trial court must ensure that the witness does not "usurp the jury's fact-finding function by summarizing or describing not only what is in evidence but also what inferences should be drawn from that evidence."  *United States v. Cooper*, 949 F.3d 744, 750 (D.C. Cir. 2020).  We have repeatedly warned that summary witnesses "should not draw controversial inferences or pronounce[ ] judgment[.]"  *United States v. Mitchell*, 816 F.3d 865, 877 (D.C. Cir. 2016) (citation omitted).

*Abou-Khatwa*, 40 F.4th at 685.  To protect against this, the government anticipates introducing its summary exhibits through the FBI agents who prepared them, and the government will instruct any witness testifying about the summary exhibits not to provide any improper opinion or inferential testimony in relation to those exhibits.

Because the records underlying the proposed summary exhibits are voluminous and cannot be conveniently presented in court otherwise, and because the evidence is relevant and admissible, the government requests that the Court admit the government's proposed summary exhibits prior

6

to trial.  Such charts summarizing voluminous admissible records are admitted in evidence regularly, particularly in complex white-collar cases such as this one.  *See, e.g.*, *Abou-Khatwa*, 40 F.4th at 685; *United States v. Cooper*, 949 F.3d 744, 750 (D.C. Cir. 2020) (finding in a tax refund fraud case that it was "[l]ittle wonder that the [summary] charts were admitted without objection" where they summarized bank records, tax returns, and refund checks showing dates of certain transactions compared to other activity) (citations omitted); *United States v. Fahnbulleh*, 752 F.3d 470, 479 (D.C. Cir. 2014); *Hemphill,* 514 F.3d at 1358 (D.C. Cir. 2008) (finding charts prepared by government auditor admissible in embezzlement prosecution, even though auditor used his accounting skills to prepare charts to show that defendant had source of funds outside her regular income, where government proffered certifications for documents used to create charts, and defendant had opportunity to rebut chart's calculations); *United States v. Weaver*, 281 F.3d 228, 232 (D.C. Cir. 2002); *United States v. Ho*, 984 F.3d 191, 209–10 (2d Cir. 2020) (rejecting defense argument that timeline charts should be precluded because it presented a "narrative supporting the prosecution's theory of the case" and holding that such charts are useful to the jury and permitted by Rule 1006); *United States v. Possick*, 849 F.2d 332, 339 (8th Cir. 1988). Admission of the proposed summary exhibits is well supported by law and promotes judicial economy—of value to all parties at trial.

The summary exhibits here meet all requirements for admission under Rule 1006.  Any concerns the defense has about the contents of the exhibits can and should be addressed through cross-examination, not preclusion of the exhibits from evidence.  The entire reason Rule 1006 requires the proponent of the summary to make the voluminous records available in advance of trial is "to provide the opposing party who desires to attack the authenticity or accuracy of a chart, summary, or calculation, with an opportunity to prepare for cross-examination, or to offer exhibits

of its own as rebuttal evidence, which would serve to counteract the impression made on the jury by the proponent's witness." *Bray*, 139 F.3d at 1109 (citing 6 WEINSTEIN'S FEDERAL EVIDENCE § 1006.06[1], p. 1006-14 (Joseph M. McLaughlin ed., 2d ed.1997)).

## CONCLUSION

To ensure a smooth trial and make efficient use of the jury's time, the government hereby asks that the Court grant its motion *in limine*.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:      */s/ Brian P. Kelly*
BRIAN P. KELLY (D.C. Bar No. 983689)
Assistant United States Attorney
United States Attorney's Office
District of Columbia
601 D Street NW
Washington, DC 20530
Office: (202) 252-7503

8