UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____x
UNITED STATES OF AMERICA,          :          Case No.: 1:25-CR-76-JMC
          Plaintiff,               :
vs.                                :
                                   :
CORTNEY MERRITTS,                  :
          Defendant.               :
_____x
```

**DEFENDANT'S RESPONSE IN OPPOSITION TO GOVERNMENT'S
MOTION TO DISCLOSE TAX RETURN AND TAX RETURN INFORMATION
*NUNC PRO TUNC* TO NOVEMBER 26, 2025**

Defendant Cortney Merritts, by and through undersigned counsel, respectfully requests that

this Court deny the Government's Motion To Disclose Tax Return And Tax Return Information

*Nunc Pro Tunc* to November 26, 2025.  Doc. # 37.

**I.      RELEVANT BACKGROUND**

The Government cannot unring a bell—yet that is precisely what it is attempting to do. And

this Court should reject the Government's invitation to join in this futile undertaking.

On November 26, 2025, the Government filed its opposition (Doc. # 31) to Merritts' motion

in limine to prohibit the Government from attributing the act of production of corporate records

to Merritts.  Doc. # 21. The opposition was publicly filed on this Court's docket. Attached to the

Government's publicly filed opposition were numerous exhibits.

Of particular relevance, exhibit 4 was a "certificate of lack of record" (IRS Form 3050) from

the IRS. *See* Doc. # 31-4.  Exhibit 5 was a letter dated April 30, 2024, from the IRS office of privacy,

governmental liaison and disclosure to AUSA Josha S. Rothstein, which included the warning that

"[i]f you or other personnel disclose the information contrary to these guidelines or use it for other

purposes, you may become liable for civil damages, fines, and imprisonment for unauthorized

disclosure under IRC Sections 7213, 7213A, and 7431, as well as Title 18 Section 1905 of the United States Code." *See* Doc. # 31-5 at p. 1. Attached to the April 30, 2024, letter was a copy of the first three pages of Merritts' 2019 IRS Form 1040, including Merritts' social security number (not redacted) and his street address (not redacted). *See* Doc. # 31-4 at p. 3. And exhibit 9 was a draft of Merritts' 2020 IRS Form 1040 Schedule C. *See* Doc. # 31-9.

Five days later, on December 1, 2025, counsel for the Government emailed the Clerk's office asking that exhibits 4 and 5 be placed under seal. *See* Doc. # 37 at n.1. The following day, the Clerk's office placed the entire opposition (Doc. # 31) under seal. *See id.* Counsel for the Government then engaged in further communications with the Clerk's office and the opposition was removed from this Court's docket as "entered in error." *Id.* The Clerk's office, in response to questioning from counsel for the Government explained, "[a]nd unfortunately, it would not be possible for us to see who has viewed/downloaded the exhibits."[1]

On December 2, 2025, the Government refiled its opposition (Doc. # 35), along with a motion to seal the exhibits previously enumerated as exhibits 4 and 5 (Doc. # 36).[2] The Government also filed the instant motion to disclose tax return and tax return information *nunc pro tunc* to November 26, 2025. Doc. # 37. Stated simply, the Government seeks an Order from this Court granting the Government permission to have filed Merritts' tax return and tax return information back on November 26, 2025, when the Government did so without a court order and in clear violation of 26 U.S.C. § 6103. The Government also notes in its motion that the exhibits filed on

---

[1] This email communication was provided to undersigned counsel by counsel for the Government and can be made available to this Court.

[2] The Government publicly filed the previously enumerated exhibit 9 (Merritts' draft 2020 IRS Form 1040 Schedule C) as exhibit 7 and makes no request to place this exhibit under seal.

November 26, 2025, also included Merritts' unredacted social security number, his home address, and the address number associated with his business. *See* Doc. # 37 at ¶ 8.

## II.     THIS COURT SHOULD DENY THE GOVERNMENT'S MOTION

On November 26, 2025, counsel for the Government violated the clear mandate of 26 U.S.C. § 6103 in disclosing sensitive taxpayer information—the Government concedes as much in the pending motion. Indeed, it appears counsel for the Government may even have committed a crime. 26 U.S.C. § 7213(a)(1) provides:

> It shall be unlawful for any officer or employee of the United States or any person described in section 6103(n) (or an officer or employee of any such person), or any former officer or employee, willfully to disclose to any person, except as authorized in this title, any return or return information (as defined in section 6103(b)). Any violation of this paragraph shall be a felony punishable upon conviction by a fine in any amount not exceeding $5,000, or imprisonment of not more than 5 years, or both, together with the costs of prosecution, and if such offense is committed by any officer or employee of the United States, he shall, in addition to any other punishment, be dismissed from office or discharged from employment upon conviction for such offense.

Making matters worse, the Government also acknowledges that its November 26, 2025, filing violated Federal Rule of Criminal Procedure 49.1 which requires redaction of social security numbers and home addresses. Indeed, every time counsel logs into this Court's electronic filing system, he or she must check a box acknowledging these requirements.



As the D.C. Circuit Court of Appeals has explained: "This general ban on disclosure provides essential protection for the taxpayer; it guarantees that the sometimes sensitive or otherwise personal information in a return will be guarded from persons not directly engaged in processing or inspecting the return for tax administration purposes. The assurance of privacy secured by § 6103 is fundamental to a tax system that relies upon self-reporting." *Gardner v. United States*, 213 F.3d 735, 738 (D.C. Cir. 2000).

In the context of this nation's history, Section 6103 plays an important role. "[I]n the wake of Watergate and White House efforts to harass those on its 'enemies list,'" Congress passed the strict confidentiality requirements found in Section 6103. *Tax Analysts v. I.R.S.*, 117 F.3d 607, 611 (D.C. Cir. 1997); *see also* Tax Reform Act of 1976, Pub. L. No. 94-455, 90 Stat. 1520 (1976); James N. Benedict & Leslie A. Lupert, *Federal Income Tax Returns-The Tension Between Government Access and Confidentiality,* 64 Cornell L. Rev. 940, 941-42 (1979) ("This fundamental change resulted in part from Watergate-related events in the 1970s where evidence was uncovered that President Nixon may have had income tax audits and investigations initiated and conducted in a discriminatory manner for purposes unrelated to the collection of taxes."). A report prepared by the Joint Committee on Taxation explained that the "[r]easons for change" included the White House's acquisition of return information "pertaining to a number of well known individuals for non-tax purposes." Joint Comm. on Taxation, JCS-33-76, General Explanation of the Tax Reform Act of 1976 at 314 (1976). Against this backdrop, the sharing of return information by the IRS with other agencies—specifically including the U.S. Department of Justice outside of its Tax Division, raised privacy concerns, which could "seriously impair the effectiveness of our country's very successful voluntary assessment system, which is the mainstay of the Federal tax system." *Id.* Rather than allowing the Executive to control

sensitive taxpayer records, "Congress undertook direct responsibility for determining the types and manner of permissible disclosures." *In re U.S.*, 817 F.3d 953, 960 (6th Cir. 2016) (quoting Office of Tax Policy, Taxpayer Confidentiality Provisions, Vol. I at 22).

As the Hon. Rudolph Contreras recognized last year, "To give teeth to these confidentiality provisions, Congress increased the criminal penalties found in 26 U.S.C. § 7213 and added civil liability." *Biden v. IRS*, case no. 1:23-cv-02711-RC (D.D.C) (at docket no. 39 at 9). As the district court explained, "Congress intended taxpayers' return information to be broadly protected from disclosure to prevent abuse by Executive officers and politicization of the voluntary assessment system" and "the evolution of these statutes additionally demonstrates that Congress specifically decided that civil liability for federal employees' unlawful activity should lie against the federal government and not against the employees themselves." *See id.* at 9-10

### A.     The Government's Request for a *Nunc Pro Tunc* Order Should be Denied

To its credit, the Government makes no attempt to argue that its November 26, 2025, disclosures were permissible. Instead, the Government asks this Court for cover. But even if this Court were to grant the Government the relief it seeks—a *nunc pro tunc* Order backdating permission to disclose the above-described documents—this will do nothing to undo the harm already caused by the Government's missteps. The Clerk's office has already confirmed there is no way to determine who accessed these documents during the five days they were publicly available, and an after-the-fact Order cannot possibly change that fact. As such, this Court should deny the Government's request that an Order be entered *nunc pro tunc*.

And, perhaps even more importantly, this Court should deny the Government's request because it finds absolutely no support in the law.

"'*Nunc pro tunc*' is a fancy phrase for backdating." *Sierra Club v. Whitman*, 285 F.3d 63, 67 (D.C. Cir. 2002). It does not mean that this Court issued an Order before it did. *See, e.g., Wilson v. U.S. Bank, N.A.*, No. 23-CV-3058 (DLF), 2024 WL 2110142, at *3 (D.D.C. May 10, 2024).

"*Nunc pro tunc* relief has been granted only in a limited number of circumstances, where its entry is necessary to avoid, and does not create, an injustice at the hands of the court itself." *Weil v. Markowitz*, 898 F.2d 198, 201 (D.C. Cir. 1990). Here, entry of an Order *nunc pro tunc* does not serve the interest of justice. As the Clerk noted in its email to Government counsel, there is no way to know how many people accessed the publicly filed documents which, separate and apart from Section 6103, included Merritts' social security number and home address. A *nunc pro tunc* Order will not undo the harm that has already occurred and cannot avoid an injustice.

"The Supreme Court has recognized two broad categories in which this equitable power may be exercised. First, the Supreme Court has held that *nunc pro tunc* relief may be used to remedy delays resulting from the judicial process that are not attributable to the unreasonable delay of the parties[.]" *In re Player's Poker Club, Inc.*, 636 B.R. 811, 825 (Bankr. C.D. Cal. 2022) (citing *Mitchell v. Overman*, 103 U.S. 62, 63–65 (1880)).

"Second, the Supreme Court has held that *nunc pro tunc* relief may be used to retroactively correct or supplement a court's record." *Id.* at 826-27 (citing *Missouri v. Jenkins*, 495 U.S. 33, 49-50 (1989) (court of appeals permitted to retroactively correct its order denying rehearing en banc to add denial of petition for rehearing, thereby reflecting what had actually occurred); *Bernards v. Johnson*, 314 U.S. 19, 22 n.4 (1941) (noting *nunc pro tunc* entry of order previously made but not timely entered on docket, as confirmed by the clerk's notes and recollection of the judge); *Coder v. Arts*, 213 U.S. 223, 237 (1909) (court of appeals allowed to make findings and conclusions retroactive to

judgment date when they were filed within the appeals period); *Supervisors v. Durant*, 76 U.S. 736, 737 (1869) (permitting *nunc pro tunc* correction of trial court's journal and marshal's return when omissions arose through inadvertence and were related to common practices)).

This use of the *nunc pro tunc* power is not without limits. As the Supreme Court has explained, "[t]he power to amend its records, to correct mistakes of the clerk or other officer of the court, inadvertencies of counsel, or to supply defects or omissions in the record, even after the lapse of the term, is inherent in courts of justice...." *Gagnon v. United States*, 193 U.S. 451, 456 (1904). But it "must not be confounded with the power to create. It presupposes an existing record, which is defective by reason of some clerical error or mistake, or the omission or some entry which should have been made during the progress of the case, or by the loss of some document originally filed therein." *Id.* at 457. Thus, in *Gagnon*, the Supreme Court upheld a collateral attack on a *nunc pro tunc* judgment of naturalization—entered over 30 years after plaintiff allegedly was naturalized—because there was no evidence establishing that an order actually had been entered at the time.

A court cannot "create" a record that does not exist. *Id.* at 456. "Put colorfully, '[n]unc pro tunc* orders are not some Orwellian vehicle for revisionist history—creating 'facts' that never occurred in fact.'" *Roman Cath. Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, 589 U.S. 57, 65 (2020) (quoting *United States v. Gillespie*, 666 F. Supp. 1137, 1139 (ND Ill. 1987)). "Put plainly, the court 'cannot make the record what it is not.'" *Id.* (quoting *Jenkins*, 495 U.S. at 49). But that is precisely what the Government requests.

The Government violated the clear mandate of Section 6103 and entry of an Order the Government seeks cannot make the record what it is not. And the Government, for its part, cites no legal authority in support of its audacious request that this Court whitewash what transpired.

**B.**     **This Court Should Deny the Government's Request to Disclose Merritts' Tax Return and Tax Return Information**

The Government seeks an Order permitting disclosure of Merritt's tax return and tax return information for purposes of opposing his motion in limine to prohibit the Government from attributing the act of production of corporate records to him. However, disclosure of these documents for that purpose is entirely unnecessary.

*First*, this Court has already denied Merritts' motion. *See* Dec. 5, 2025, Minute Order. As such, disclosing the documents for that purpose is unwarranted. *Second*, the documents the Government seeks permission to disclose are not even relevant to that issue. Additionally, exhibit 5 to the Government's original opposition expressly notes, "If you need documents certified for actual introduction into a court proceeding, contact the Disclosure Office using the phone number provided in this letter." Doc. # 31-5 at 1. In other words, the document the Government seeks to introduce "into a court proceeding" is not even properly certified for this purpose. At a minimum, the Government's request is premature as it does not appear to yet possess documents certified for "actual introduction into a court proceeding" and whether these documents should be admitted at trial is a different question for a different day.

## III.     CONCLUSION

Based on the foregoing, Merritts respectfully requests that this Court deny the Government's Motion To Disclose Tax Return And Tax Return Information *Nunc Pro Tunc* to November 26, 2025, and for such other and further relief as this Court deems necessary and just under the circumstances.

Respectfully submitted,

/s/Joseph A. DiRuzzo, III                                    Dec. 16, 2025
Joseph A. DiRuzzo, III
MARGULIS GELFAND DIRUZZO & LAMBSON, LLC
500 East Broward Blvd., Suite 900
Ft. Lauderdale, FL 33394
954.615.1676 (o)
954.827.0340 (f)
jd@margulisgelfand.com

/s/ Justin K. Gelfand
Justin K. Gelfand
MARGULIS GELFAND DIRUZZO & LAMBSON, LLC
7700 Bonhomme Avenue
Suite 750
St. Louis (Clayton), Missouri 63105
314.390.0230 (o)
314.485.2264 (f)
justin@margulisgelfand.com

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that on Dec. 16. 2025, a true and correct copy of the foregoing has

been filed via ECF and that a NEF will be provided to counsel of record.

/s/Joseph A. DiRuzzo, III
Joseph A. DiRuzzo, III