**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 25-cr-00076-JMC** |
| | : | |
| **CORTNEY MERRITTS,** | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO RECONSIDER
ORDERS DENYING MOTION TO DISMISS FOR SELECTIVE PROSECUTION AND
ORDERS CONCERNING FORMER CONGRESSWOMAN CORI BUSH AND
CROSS-MOTION TO QUASH DEFENDANT'S SUBPOENAS ON IRS-CI OFFICIALS**

The United States of America respectfully opposes defendant Cortney Merritts's Motion to

Reconsider Orders Denying Motion to Dismiss for Selective Prosecution and Orders Concerning

Former Congresswoman Cori Bush (ECF No. 48). The defendant has presented no evidence that

the government misled the Court or that the Court patently misunderstood the parties, made a

decision beyond the adversarial issues presented, or made an error in failing to consider controlling

decisions or data; has identified no controlling or significant change in the law since these issues

were decided; and has not demonstrated that harm would flow from a denial of reconsideration. In

conjunction with his motion for reconsideration, the defendant has requested the government to

effect service of trial subpoenas on three IRS-CI officials. These subpoenas appear to have been

served on the assumption the Court would grant his request for discovery in support of his selective

prosecution motion. As there is no basis for the Court to grant a request for discovery, the

government requests that such subpoenas be quashed because the testimony of the witnesses in

question is not relevant or material to any issue at trial.

## I.      No Discovery was Hidden from the Defendant.

As a preliminary matter, no evidence was "hidden" from the defendant. To the contrary, after conducting a thorough Jencks inquiry of the IRS-CI agent on December 4, 2025 (notwithstanding the unlikelihood that the government would call that individual as a witness) and learning for the first time that the documents in question existed, the prosecution immediately obtained and turned over the documents that same day in an effort to ensure the defendant had them in time for the pretrial hearing the next day. The production was small (eleven documents total, including a number of near duplicates) and thus it borders on frivolous to insinuate that the documents were hidden from the defendant. Had the government intended to "hide" such documents, it would make no sense for the government to have produced them immediately upon discovering their existence.

## II.      The Defendant Has Failed to Establish a Basis for Reconsideration.

The Federal Rules of Criminal Procedure do not specifically provide for motions for reconsideration in criminal cases, but the Supreme Court has recognized, in *dicta*, the utility of such motions. *United States v. Sunia*, F. Supp. 2d 51, 60 (D.D.C. 2009) (citing *United States v. Dieter*, 429 U.S. 6, 8 (1976)). As recently acknowledged in *United States v. Burns*, No. 24-CR-151 (JMC), 2025 WL 1078781, at *3 (D.D.C. Apr. 10, 2025):

> Although courts differ in the precise standard applied to such motions, courts in this district have consistently applied the "as justice requires" standard lifted from motions to reconsider interlocutory decisions in civil cases. *See* [*Sunia*, F. Supp. 2d] at 60–61. Under that standard, the court may grant the motion if "the Court patently misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling decisions or data, or [if] a controlling or significant change in the law has occurred," and if "some harm [ ] would flow from a denial of reconsideration." *Id.* at 61. Alternatively, the Court may grant reconsideration "if there are other good reasons for doing so." *Id.*

As the defendant has failed to satisfy this standard, his motion should be denied in its entirety.

### A. The Defendant Has Failed to Meet the Threshold for Reconsideration of the Denial of His Selective Prosecution Motion or Discovery and His Subpoenas to IRS-CI Officials Should be Quashed.

The defendant's motion for reconsideration of the denial of his selective prosecution motion is premised on the false notion that the documents provided on December 4, 2025, demonstrate that the government brought the pending case because the defendant is "the husband of an outspoken Democratic former congresswoman." ECF No. 14 at 6. As nothing in the documents at issue establish any evidence of discriminatory purpose, or, as the defendant concedes through his complete lack of argument, establish any evidence of discriminatory effect, his motion for reconsideration of the denial of his selective prosecution motion and related request for discovery must fail.

The documents the defendant attached to his motion comprised a Subject Investigation Initiation package that the IRS-CI agent drafted on May 1, 2024, seeking supervisory approval—at the request of the U.S. Attorney's Office—to expand his preliminary analysis of the COVID loan fraud case into a fulsome bank fraud investigation.[1] That package is attached (under seal) as Exhibit A (USAO-010755 et seq.). Importantly, all the documents at issue were drafted on or before May 1, 2024, during the Biden administration, wholly undermining any argument that the investigation was motivated by animus of the new administration against the defendant or his

---

[1] *See* https://www.irs.gov/compliance/criminal-investigation/how-criminal-investigations-are-initiated (12/30/2025) ("Special agents analyze information to determine if criminal tax fraud or some other financial crime may have occurred. Relevant information is evaluated. This preliminary process is called a 'primary investigation.' The special agent's front line supervisor reviews the preliminary information and makes the determination to approve or decline the further development of the information. If the supervisor approves, approval is obtained from the head of the office, the special agent in charge, to initiate a 'subject criminal investigation.' At this point, at least two layers of CI management have reviewed the 'primary investigation' material and determined there is sufficient evidence to initiate a subject criminal investigation.")

spouse based on their political affiliation or employment. Moreover, the agent's supervisors *declined* his request for more in-depth participation in the investigation because none of the proposed charges were charges the IRS-CI investigates standing alone.[2] That is why the agent did not initial the case opening document (Defense Exhibit 3/Government Exhibit A at USAO-010759), why there is blank space next to "Date Initiated" on that document, and why none of the *draft* documents in the package bear the signature of any IRS official. Accordingly, all the defendant's arguments about who approved the instant investigation or their motive for doing so are also without merit.

Despite the defendant's wholly misplaced reliance on draft documents that were created during the Biden administration, the government addresses some of his more specific arguments about them below.

Defense Exhibit 3 was an IRS-CI case opening document recommending an investigation into a Paycheck Protection Program loan obtained by the defendant. Notwithstanding the defendant's allegations, absolutely nothing in this document demonstrates that the agent's request to expand his preliminary analysis into a fulsome bank fraud investigation was politically motivated. As is evident, the case opening document is a boilerplate form that requires the agent to answer a series of questions. Question 2(c) asked generally, "How is the investigation

---

[2] *See* I.R.M. 9.1.3.4.15 ("Note: Per Tax Division Directive No. 128, dated October 29, 2004, the DOJ Tax Division may approve bank fraud charges in tax-related cases involving schemes to defraud the government or other persons if there was a large fraud loss or a substantial pattern of conduct and there is a significant benefit to bringing the charges instead of or in addition to Title 26 violations. Bank fraud charges may be appropriate in the case of a fraud scheme that victimized a financial institution. For example, bank fraud charges would be appropriate where a defendant filed false refund claims and induced a financial institution to approve refund anticipation loans on the basis of the fraudulent information submitted to the IRS.").

impactful?" It then required the agent to answer four sub-questions, three of which are relevant here.

Question 2(c)(i) asked about the "Notoriety of Target." The agent responded that the defendant was "the husband of Congresswoman Cori Bush." In short, the agent observed that being married to a national political figure gives a person notoriety. Notably, the agent did *not* identify Congresswoman Bush's party or elaborate that she was also the subject of a political corruption investigation (even though "Political Corruption Investigations" was specifically listed as an example of "Notoriety.") The agent's response was akin to noting that the defendant was married to a famous athlete or actress and thus that he had notoriety derived from that person's fame.[3] Had the agent failed to note this fact, he would have neglected to alert his supervisors that publicity from this case could be impactful from a general deterrence perspective — a perfectly valid factor for the government to consider in determining whether to pursue a case. *See United States v. Armstrong*, 517 U.S. 456, 465 (1996) ("Judicial deference to the decisions of these executive officers rests in part on an assessment of the relative competence of prosecutors and courts. Such factors as the strength of the case, *the prosecution's general deterrence value*, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake." (emphasis added)).

Question 2(c)(iii) asked the agent to "[d]escribe the factors that ma[d]e the investigation impactful[,]" and then listed example responses including "media attention, notoriety of subject,

---

[3] The defendant has offered no authority, and the government is aware of none, to support the proposition that being a person of note, or the spouse of a person of note, constitutes a protected class.

effect on community, international nexus, virtual currency, [and] dark web." Akin to his answer to the first question, the agent responded, "[m]edia attention since he is the husband of a congresswoman." Again, there was no reference to the congresswoman's party or the campaign funds investigation. And again, had the agent failed to note that the investigation might garner media attention because of the defendant's derivative fame, and thus promote general deterrence, his answer would have lacked pertinent information.

Question 2(c)(iv) asked whether the investigation "involve[d] sensitive subjects as defined by IRM 9.4.1.6.3 or other sensitive factors?" IRM 9.4.1.6.3 describes the approval authority required for sensitive versus non-sensitive investigations.[4] The agent responded that the defendant was "not a sensitive subject but [that] his spouse" was one, and that he "work[ed] for his wife's campaign." The agent's concise but complete response to the question demonstrates only that he wanted to ensure his supervisory chain could consider the appropriate level of authority required to approve a more in-depth investigation. Neither the question nor the agent's response have any bearing on the reasons for expanding the investigation.

In Defense Exhibit 4 (Government Exhibit A at USAO-010762), a draft approval letter addressed to the U.S. Attorney's Office, and Defense Exhibit 5 (Government Exhibit A at USAO-010763), a Note to Reviewer for a Signature Package, the same agent repeated the same facts elaborated in Defense Exhibit 3, for the same reasons.

At bottom, the defendant has offered nothing more than evidence that at least one IRS-CI agent believed a factor in favor of conducting a more in-depth investigation at the IRS was that it would garner media attention (and thus promote general deterrence); and that said agent wanted to ensure the investigation was approved at the correct level of supervision. Not a single newly-

---

[4] *See* https://www.irs.gov/irm/part9/irm_09-004-001#idm139708211836224 (12/30/2025).

asserted fact establishes that the government brought this case for an improper purpose, such as political affiliation or political employment. Further, the defendant has offered no new evidence to prove discriminatory effect, an essential element to establish selective prosecution. Accordingly, both his motion to reconsider the denial of his selective prosecution motion and his related request for discovery should fail. *See Armstrong*, 517 U.S. at 465 (to demonstrate selective prosecution, a defendant must provide "clear evidence" that the government's actions "had a discriminatory effect *and* that it was motivated by a discriminatory purpose" (emphasis added)); *see also* Transcript of December 5, 2025, Pretrial Conference at 24:8 – 26:14 (this Court denying the selective prosecution motion in part because "the defendant has not shown that he was singled out for prosecution from among other similarly situated [individuals,]" "the defense has failed to properly identify the group to which he is similarly situated[,]" "even taking this group that the defense has identified for comparison … there is just some evidence that there are other similarly situated [individuals] that have been prosecuted for this type of loan fraud in this amount[,]" and "the defense has failed to demonstrate discriminatory effect").

The Court should also quash the defendant's subpoenas to the IRS-CI officials because the Court has not authorized discovery on the defendant's selective prosecution claim and the defendant has no valid basis to call such witnesses to the stand at trial. Under Federal Rule of Criminal Procedure 17(a), "a valid subpoena may command a witness to attend and testify." *United States. v. Llanez-Garcia*, 735 F. 3d 483, 493 (6th Cir. 2013) (internal citations omitted). When evaluating a motion to quash a subpoena ad testificandum, courts frequently draw on principles analogous to those used when deciding a motion to quash a subpoenas duces tecum. *United States v. Santistevan*, No. 11-cr-00406-CMA, 2012 WL 2875949 *1 (D. Colo. July 12, 2012) ("The standard is basically the same for subpoenas compelling the attendance of witnesses—i.e.,

subpoenas ad testificandum under Rule 17(a)" as it is for subpoenas duces tecum under Rule 17(c)). In particular, "a subpoena ad testificandum survives scrutiny if the party serving it can show that the testimony sought is both relevant and material." *Stern v. U.S. Dist. Ct.*, 214 F.3d 4, 17 (1st Cir. 2000)). The three IRS-CI officials on whom the defendant has requested the government to effect service are the same individuals whose names were included on these draft documents that were never signed or approved. As no request for discovery has been granted and the only purpose the defendant can offer for calling any of these witnesses at trial is to offer arguments this Court has already deemed inadmissible, the subpoenas ought to be quashed.

### B. The Defendant Has Failed to Meet the Threshold for Reconsideration of This Court's Rulings Concerning Appropriate Bias Testimony.

The defendant also argues the Court should reconsider its order granting the government's motion to exclude details of the campaign finance investigation because the discovery in question revealed for the first time that he was "a target" of the campaign finance investigation. As the defendant has failed to provide any new evidence establishing that he was a target of the campaign finance investigation and continues to fail to identify any reason details of the nature of that investigation are relevant to assessing the bias of any individual witness, his request for reconsideration of the Court's ruling on bias examination should also fail.

First, if the defendant means to assert that the evidence in question revealed he was a "target" of the campaign finance investigation as that term is used in the Justice Manual, he is incorrect. As defined in the Justice Manual, "[a] 'target' is a person as to whom the prosecutor or the grand jury has substantial evidence linking him or her to the commission of a crime and who, in the judgment of the prosecutor, is a putative defendant." Justice Manual 9-11.151. The United States correctly asserted at the pretrial conference that the defendant was never a target of the campaign finance investigation. No target warnings were appended to the subpoena served on him

8

to produce documents. No representations were ever made to his counsel that he was a target. No target letter inviting him to testify before the grand jury was ever sent. No potential charges against him were ever presented to a grand jury.

Second, the May 19, 2023, letter by the U.S. Attorney's Office to IRS-CI (Defense Exhibit 2/Government Exhibit A at USAO-010764) inviting IRS-CI to participate in a grand jury investigation "concerning" four individuals including the defendant and involving allegations including unlawful conversion of campaign funds for personal purposes does not support his argument. Describing a grand jury investigation as "concerning" several individuals is hardly the same thing as identifying those individuals as "targets." Indeed, "concerning" is consistent with the Justice Manual's definition of a "subject" of a grand jury investigation — "a person whose conduct is within the scope of the grand jury's investigation" — which is a wholly-different classification from one who is a "target" of an investigation. Justice Manual 9-11.151. Nowhere in the letter does it identify the defendant as a "target" of the grand jury investigation or indicate that the prosecutor or the grand jury had substantial evidence linking him to the crimes being investigated or that he was a putative defendant.

Third, as the Government explained during the prior argument, it was exceedingly unlikely that anyone other than former Congresswoman Bush or a campaign staffer involved in the preparation or filing of her FEC reports could have been charged with any of the charges identified in the letter.[5] Even the reference to a potential conspiracy charge under 18 U.S.C. § 371 relates to a potential *Klein* conspiracy, *i.e.*, a conspiracy to impede the FEC through false filings. There is no

---

[5] The crimes identified in the letter included unlawful conversion of campaign funds for personal purposes in violation of 52 U.S.C. § 30114(b), causing false campaign expenditure reports in violation of 52 U.S.C. §§ 30104 and 30109, false statements in violation of 18 U.S.C. § 1001, wire fraud in violation of 18 U.S.C. § 1343, falsification of records in violation of 18 U.S.C. § 1519, and conspiracy to commit an offense against the United States in violation of 18 U.S.C. § 371.

evidence, nor was there ever any evidence, that the defendant had any role in the preparation or filing of the FEC reports. Simply put, the defendant was never a target or even the focus of the investigation related to the charges listed.

Fourth, at all times prior to the defendant's filing of his motion to dismiss for selective prosecution, he was aware that his conduct fell within the scope of the grand jury investigation of former Congresswoman Bush, *i.e.*, that he was a "subject" as that term is defined in Justice Manual 9-11.151. Indeed, the government's very first discovery production on April 21, 2025, included a memorandum memorializing an interview the FBI conducted with the defendant on December 6, 2023, in which the defendant was advised of the nature of the interview and asked questions about security services he purportedly provided to the campaign. *See* Government Exhibit B (USAO-002530). The government's second discovery production, dated April 30, 2025, included the FBI's case opening document, which explained that the investigation would address allegations the campaign improperly paid two individuals, including the defendant, thousands of dollars for security services despite no evidence security services were performed or that these individuals owned security firms. *See* Government Exhibit C (USAO-005687, filed under seal). As nothing prevented the defendant from arguing these facts in prior litigation, and the recently provided documents shed no additional light, they provide no basis for reconsideration.

Finally, contrary to the defendant's allegation, the government has never stated, nor intended to imply to the Court, that the defendant's conduct was not within the scope of the campaign funds investigation. The record demonstrates that all the parties were less than artful in their use of the word "target" during the pretrial hearing and may have been using the term in a colloquial fashion to indicate that the defendant was not the focus of the campaign funds investigation. Ultimately, it is fair to say that both the defendant and former Congresswoman Bush

10

were subjects (but not targets) of the campaign finance investigation, that former Congresswoman Bush was the focus of that investigation, and that neither individual ever rose to the level of a "target."

Indeed, the government's representations at oral argument were consistent with representations made in its August 29, 2023, application for a 2703(d) order to Google, disclosed to the defense on April 30, 2025 (USAO-6371) and filed under seal as Exhibit D. Therein, the government described its investigation as involving:

> [P]otential violations of federal law by Congresswoman Cori Bush, her campaign committee, and others both known and unknown to the Government. This investigation concerns, but is not limited to, potential criminal offenses, including unlawful conversion of campaign funds for personal purposes, in violation of 52 U.S.C. § 30114(b), causing false campaign expenditure reports, in violation of 52 U.S.C. §§ 30104 and 30109, false statements, in violation of 18 U.S.C. § 1001, wire fraud, in violation of 18 U.S.C. § 1343, falsification of records, in violation of 18 U.S.C. § 1519, and conspiracy to commit an offense against the United States, in violation of 18 U.S.C. § 371. Specifically, the United States is investigating whether Congresswoman Cori Bush illegally used campaign funds for her personal use or made illegal payments to a family member, then concealed such activity by making false filings with the Federal Election Commission (FEC).

*See* Exhibit D at 2-3.

The application went on to state that "the Subject Accounts are all associated with one of the previously mentioned **subjects of the investigation**: Cori Bush, Cortney Merritts, [Person 1], [Company 1], and [Person 2] (who has been listed as a registered agent for [Company 1])." *Id.* at 6-7 (emphasis added). As evidenced by this application, and by the government's representations to the Court, at all times the defendant was a "subject" of the initial investigation and was never — as the defendant baselessly argues — a "target." The defendant was also already well on notice that, while former Congresswoman Bush was the focus of that investigation, his own conduct was also within its scope. For the defendant to represent otherwise through baseless accusations and hyperbolic language is disingenuous at best.

Even if the government inadvertently confused the Court on these points, however, there is no basis for the defendant to obtain reconsideration. The defendant has still failed to identify why the details of the nature of the prior investigation are relevant to assessing the bias of any individual witness. The only potential witness to whom any of the documents in question could possibly be relevant is the IRS-CI agent who drafted the Subject Initiation Package, whom the government does not expect to call as a witness at trial.

## III. Conclusion

For the foregoing reasons, the defendant's motion should be denied in its entirety and his subpoenas to IRS-CI officials should be quashed.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:      /s/ *Emily A. Miller*
EMILY A. MILLER (D.C. Bar No. 462077)
Assistant United States Attorney
United States Attorney's Office
District of Columbia
601 D Street NW
Washington, DC 20530
Office: (202) 252-6988