**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Case No. 25-cr-00076-JMC** |
| | **:** | |
| **CORTNEY MERRITTS,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO DISQUALIFY AND CROSS-MOTION TO PROHIBIT THE DEFENDANT FROM RAISING THE CIVIL SUIT AT TRIAL**

The United States of America respectfully opposes defendant Cortney Merritts's motion to disqualify the U.S. Attorney's Office for the District of Columbia ("USAO-DC") or, in the alternative, the Assistant United States Attorneys whose conduct is challenged in *Merritts v. United States*, Case No. 1:25-cv-04343 (ECF No. 50). The defendant has failed to provide any proof, much less the required proof by clear and convincing evidence, of misconduct or shown that the prosecutors or the USAO-DC have a personal interest, financial or otherwise, in the outcome of the criminal case. Accordingly, the Court should not exercise its supervisory powers to disqualify either the assigned prosecutors or the USAO-DC. Granting the defendant's motion on the facts in this case would do nothing but reward the defendant's highly questionable attempt to postpone the trial here, *see* ECF No. 56 (Defendant's Motion to Continue Trial) or "to create for [himself] a bargaining chip in order to obtain more favorable disposition of the criminal charges in the indictment." *United States v. Heldt*, 668 F.2d 1238, 1278 (D.C. Cir. 1981). Such a result would be wholly inconsistent with an impartial system of justice.

Further, as the civil trial is wholly irrelevant to the defendant's guilt or innocence, the United States also requests the Court prohibit the defendant from offering evidence or argument about the civil case during his criminal trial.

## I.      Relevant Background

On March 20, 2025, a grand jury returned an indictment against the defendant for two counts of wire fraud, in violation of 18 U.S.C. § 1343, for submitting fraudulent loan applications to the United States Small Business Administration ("SBA") under the Economic Injury Disaster Loan Program ("EIDL") and the Paycheck Protection Program ("PPP"). In both applications, the defendant materially overstated the revenue he generated from his moving business, d/b/a "Vetted," resulting in him receiving government funds to which he was not entitled.

The investigation into the defendant's conduct began in 2023, when the government became aware of the fraudulent EIDL and PPP loan applications during an investigation into whether former Congresswoman Cori Bush misused campaign funds in connection with payments made to the defendant for security services. The prosecutors who handled the investigation leading to the defendant's indictment were Assistant U.S. Attorney ("AUSA") Joshua Rothstein and Special AUSA Rami Sibay.

On March 7, 2024, the government obtained an ex parte order pursuant to 26 U.S.C. § 6103(i)(1), directing the Internal Revenue Service ("IRS") to disclose returns and return information for the defendant for the taxable periods January 1, 2019, through December 31, 2022 (24-gj-00015, ECF No. 2), filed under seal as Exhibit A hereto. The order provided that the information disclosed by the IRS was to be used by the government employees assigned to this matter "solely for investigating the above-mentioned violations of 18 U.S.C. § 1343 and preparing the matter for trial (or other federal proceeding) and that no disclosure be made to any other person

except in accordance with the provisions of 26 U.S.C. § 6103 and 26 C.F.R. § 301.6103(i)(1)." *Id.* at 4.

On June 28, 2024, the government obtained an ex parte order pursuant to 26 U.S.C. § 6103(i)(1), directing the IRS to disclose returns and return information for Vetted for the taxable periods August 7, 2017, through December 31, 2022, (24-gj-00034, ECF No. 2), filed under seal as Exhibit B hereto. The order contained the same language authorizing government employees to disclose any returns or return information provided by the IRS in "preparing the matter for trial (or other federal proceeding)." *Id.* at 4.

On June 27, 2025, this Court set this matter for trial on January 12, 2026 (Minute entry 06/27/2025). Due to the press of business resulting from his appointment to a supervisory position in the Fraud, Public Corruption, and Civil Rights Section of USAO-DC, and the conclusion of Special AUSA Sibay's detail on January 13, 2026, one day after trial is scheduled to begin, the assignment of new prosecutors was necessary for purposes of trial.[1]

On October 9, 2025, AUSA Brian Kelly entered his appearance for the purpose of taking this case to trial (ECF No. 12). On November 21, 2025, AUSA Emily Miller entered her appearance after being assigned as co-counsel (ECF No. 29). Five days later, on November 26, 2025, pretrial motions were due.

AUSA Miller was the primary author of an opposition to the defendant's motion to prohibit the government from introducing expert testimony at trial (ECF No. 21). On the due date, AUSA Miller filed an opposition to the defendant's motion (ECF No. 31). As the ex parte orders

---

[1] On December 5, 2025, Special AUSA Sibay withdrew his appearance due to the impending conclusion of his detail (ECF No. 38). The defendant's implication that he withdrew because of defense counsel's email alleging a violation of 26 U.S.C. § 6103, ECF No. 50 at 3, is baseless. It is also frivolous given that the government informed the defense as to the reason for the withdrawal on December 23, 2025.

authorized the government to use the documents obtained from the IRS for "preparing the matter for trial (or other federal proceeding)," AUSA Miller attached Exhibits D1 (ECF No. 31-4) and D2 (ECF No. 31-5) to the motion. Exhibit D1 was comprised of the IRS's disclosure of records concerning Vetted. Exhibit D2 was comprised of the IRS's disclosure of records concerning the defendant. These documents were offered in support of the government's contention that Vetted was a sole proprietorship and d/b/a name for the defendant, not a corporate entity, and thus was not entitled to any protections under *Braswell*.

On December 1, 2025, prompted after completing an annual tax refresher training, AUSA Miller reviewed the text of 26 U.S.C. § 6103 in the effort to confirm whether the attachment of Exhibits D1 and D2 was proper. AUSA Miller then learned that while no prior court authorization was required to disclose return or taxpayer return information in a tax-related criminal case, *see* 26 U.S.C. § 6103(h)(4)(B), the government needed to establish that such information was "probative of a matter in issue relevant in establishing the commission of a crime or the guilt or liability of a party" before it could be publicly disclosed in in a non-tax-related criminal case. *See* 26 U.S.C. § 6103(h)(4)(A)(i). AUSA Miller immediately took steps to rectify her error, calling the Clerk's office[2] and then emailing the Clerk's office at 4:39 p.m. to request that the relevant exhibits be placed under seal. *See* Exhibit C (filed under seal).[3]

---

[2] There was no answer as it was after-hours.

[3] In an initial abundance of caution, AUSA Miller also requested that Exhibit H to the opposition (ECF No. 31-9)—a draft 2020 Form 1040 schedule C the defendant appended to his loan application—be placed under seal. AUSA Miller ultimately concluded sealing of that document was unnecessary because it was not obtained from the IRS and thus did not come within the ambit of 26 U.S.C. § 6103.

At 8:00 a.m. the following morning, the Clerk's Office responded that the documents had been "locked down" but that a motion to seal would be required to keep the relevant documents under seal. *See* Exhibit D. The same day, AUSA Miller refiled the public opposition without the exhibits in question (ECF No. 35), filed a motion to place those exhibits under seal (ECF No. 36), and filed a motion to authorize disclosure of the documents consistent with the provisions of 26 U.S.C. § 6103(h)(4)(A)(i) (ECF No. 37).[4] In connection with the filing of the revised opposition and related motion to seal, AUSA Miller observed that a technical issue caused redactions that had been made to Exhibit D2 to fail to be preserved. AUSA Miller also corrected those errors before refiling the exhibit under seal.[5]

AUSA Miller also took steps to determine the actual impact of her inadvertent disclosure. In a discussion with the Criminal Clerk's Office on December 2, 2025, the Criminal Case Administrator indicated that it would not be possible for the Clerk's Office to see who had viewed

---

[4] Such disclosure is wholly permissible for the reasons described in those documents and in the government's reply to the defendant's opposition to disclosure (ECF No. 53), all of which are incorporated by reference herein. In short, the documents are being offered because they are probative of "a matter in issue relevant in establishing the commission of a crime" and the defendant's privacy interest in the documents is minimal given that the same or similar documents and information (with the permission of the Court) will be elicited at trial. Certainly, there is no evidence they are being offered for an improper purpose.

[5] Any redaction errors were inadvertent. The government obviously took pains to apply redactions, as twelve of the fifteen exhibits it filed in conjunction with its initial pleading (ECF No. 31) contained redactions of the defendant's social security number, physical address, email address, phone number, date of birth, his company's business tax identification number, and the names and contact information of various individuals who were identified in text messages. The redacted documents included Exhibit D2, but the redaction boxes on the tax return itself appear to have saved to a random location on the document—as evidenced on page USAO-009693 in the section designated "Refund"—rather than the locations in which they were originally placed.

or downloaded the documents. *See* Exhibit E.[6] In a follow-up conversation with the Court's ECF Coordinator on December 16, 2025, the government learned that PACER would be able to tell the Court who accessed the document, provided it was not accessed at a public terminal or via a Notice of Electronic Filing ("NEF"). *See* Exhibit F.

The next day, the ECF Coordinator informed AUSA Miller that according to what was discernible from PACER records, "[o]nly government counsel viewed the 2 exhibits in question," but there were two unidentified media members who received the NEF and there was no way to determine if they viewed the documents. *See* Exhibit G. It is reasonable to infer that the documents were never viewed or downloaded by either of these media members or any other person at a public terminal. The documents were attached to a pleading that on its face was unlikely to have attracted any public interest. The government has been unable to identify a single article in which a news organization claims to possess the information in question. Despite every incentive to do so, having alluded to the fact that there has been news coverage of this case (ECF No. 50 at 8), the defendant has offered no proof the documents were viewed or downloaded by members of the news media.

## II.      Disqualification of the Prosecutors or the USAO-DC is Wholly Unwarranted.

Disqualification of the assigned prosecutors is unwarranted. The defendant has provided no evidence, much less the "very strong" evidence of a conflict of interest required by applicable law. *Heldt*, 668 F.2d at 1276 n. 80. The defendant has failed to offer, as required, "proof, by clear and convincing evidence, of a prima facie case of misconduct on the part of [any] AUSA." Id. Further, there is no appearance of impropriety, in that none of the prosecutors have any interest,

---

[6] The defendant's reference to this communication as an "ex parte communication" (ECF No. 50 at 6), as though it were somehow inappropriate for the government to communicate with the Clerk's office absent the presence of defense counsel, is absurd.

pecuniary or otherwise, in the outcome of the civil case. Accordingly, the defendant has failed to show that he will "be denied the impartial objective exercise of that discretion to which he is entitled." *Heldt*, 668 F.2d at 1276.

### A.      There is No Conflict of Interest.

In *Heldt*, the defendants argued that they were denied due process after the district court failed to disqualify prosecutors who were defendants in a civil action the defendants brought alleging that the prosecutors had participated in a bad faith unconstitutional search of their office. *Heldt*, 668 F.2d at 1275. The Court explained that:

> The potential conflict of interest that might result from a personal civil suit filed against an Assistant United States Attorney (AUSA) by a defendant in a criminal case for acts undertaken by the AUSA in his official capacity in the criminal matter would have to be **very strong** before disqualification would be justified. It could not be justified by mere inference from the filing of the suit but would require proof, by clear and convincing evidence, of a prima facie case of misconduct on the part of the AUSA.

*Heldt*, 668 F.2d at 1276 n. 80 (emphasis added). *See also United States v. Kember*, 685 F.2d 451, 458-59 (D.C. 1982) (arising out of the same case, and noting that the district judge did not err by refusing to disqualify USAO-DC or members of that Office for bias and conflict of interest as there was no evidence of bad faith or any misconduct on their part). The Court found that the alleged conflict of interest brought about by the prosecutors being named as defendants in the civil suit for acts taken in their official capacity was "not at all apparent."

As a preliminary matter, the disclosure at issue in the defendant's civil suit was made by AUSA Miller in her official capacity in the criminal matter. The exhibits were attached to an opposition to the defendant's motion to prohibit corporate attribution, and they were offered as being probative of relevant fact, i.e., that the defendant's business was a sole proprietorship unentitled to protection under *Braswell v. United States*, 487 U.S. 99 (1988). Accordingly, there

7

can be no civil liability against any of the assigned prosecutors or the USAO-DC. A prosecutor is absolutely immune from suits for damages arising from the performance of the traditional functions of an advocate, such as filing a pleading. *Kalina v. Fletcher*, 522 U.S. 118, 120 (1997) (prosecutor's activities in connection with the preparation and filing of two of the three charging documents—the information and the motion for an arrest warrant—are protected by absolute immunity); *Heldt*, 668 F.2d at 1276 n. 79 ("Unless the defendant can complain of some action taken by the prosecutor outside of his quasi-judicial capacity, such suit will generally be barred by absolute immunity.").

The statute on which the defendant's civil lawsuit is predicated provides no exception to this principle, authorizing only suits against the United States, *not* the USAO-DC or its employees. *See* 26 U.S.C. § 7431(a)(1) (authorizing civil actions for damages based on the disclosure of return or return information "against the United States"). Accordingly, the high standard for disqualification set forth in *Heldt* is applicable.

The defendant has not met that standard. He has failed to offer any proof, much less proof by clear and convincing evidence, of a prima facie case of misconduct on the part of any AUSA. There is no evidence the disclosure at issue was intentional, having been attached to an opposition to a motion that could not possibly be expected to attract public interest. Moreover, the record demonstrates that five days after the disclosure at issue, on her own initiative, AUSA Miller scrutinized the propriety of her prior disclosure. Immediately after determining that prior court authorization was required to disclose return or taxpayer return information in a non-tax-related criminal case, AUSA Miller caused the Clerk's office to place the pertinent documents under seal; sought defense counsel's position on disclosure; filed a revised opposition, motion to seal the relevant exhibits, and motion seeking authority to disclose; corrected redaction errors caused by

technology flaws; and ensured that in actuality, the disclosure had no discernible effect. An inadvertent error that a prosecutor immediately seeks to remedy does not by clear and convincing evidence constitute *misconduct*. *See, e.g., United States v. Burns,* 2016 WL 3910273, at *7 (W.D.Va. 2016) (disqualifying the lead prosecutor for "misrepresentations, omissions, and evasions," that were "clearly" not inadvertent); cf. *United States v. LaRouche Campaign*, 695 F. Supp. 1290, 1316 (D. Mass. 1988) (finding that disqualification would be an excessive sanction because the attorneys did not deliberately violate any disclosure obligations).

Given there is no evidence that AUSA Miller or any other prosecutor acted intentionally or for an improper purpose, the defendant has failed to show very strong inference of a potential conflict that would be required for disqualification under *Heldt*. In fact, it would be entirely inconsistent with *Heldt* for the Court to find a conflict of interest based on the prosecutors being potential witnesses in the civil suit for actions taken in their official capacity; in *Heldt*, the court found that the alleged conflict of interest brought about by the prosecutors being *named as defendants* in a civil suit for acts taken in their official capacity was "not at all apparent." *Heldt*, 668 F.2d at 1276 n. 80.

## B.    There is No Appearance of Impropriety.

The defendant has failed to establish that any "prosecutor's personal interest as the defendant in a civil case will be furthered by a successful criminal prosecution," denying him "the impartial objective exercise of that discretion to which he is entitled." *Heldt*, 668 F.2d at 1276. *See Marshall v. Jerrico, Inc.*, 446 U.S. 238, 249-50 (1980) ("A scheme injecting a personal interest, financial or otherwise, into the enforcement process may bring irrelevant or impermissible factors into the prosecutorial decision and in some contexts raise serious constitutional questions.") Accordingly, there is no appearance of impropriety.

9

As established above, and as conceded by the defendant,[7] neither the prosecutors nor USAO-DC have any pecuniary interest in the outcome of the civil case. Other than his therefore frivolous argument that the prosecutors have taken (or will continue to take) actions in his criminal case to "protect themselves from civil liability," the defendant has offered no evidence that the prosecutors or USAO-DC will inject a personal interest, financial or otherwise, into the enforcement process.

The defendant's argument that "the people and office alleged to be culpable have every incentive to do everything possible to discredit him and to retaliate against him" and to "silence him and turn him into a convicted felon by the time his civil case is ultimately litigated," ECF No. 50 at 8, is a red herring. Preliminarily, the defendant has failed to explain even *why* his civil lawsuit would incentivize the prosecutors to engage in improper tactics to bring about a wrongful conviction in this case. Hypothetically, his lawsuit is a reason for the prosecutors to show undue leniency in his criminal case or make him an overly favorable plea offer in exchange for his withdrawing the civil action, not a reason for the prosecutors to "retaliate" by engaging in improper behavior in his criminal case.[8]

---

[7] *See* ECF No. 50 at 2 ("Congress specifically decided that civil liability for federal employees' unlawful activity should lie against the federal government and not against the employees themselves.") (quoting *Biden v. IRS*, Case No. 23-cv-02711-RC (Doc. 39 at 9)).

[8] Of course, if there were a valid basis to believe the prosecutors would engage in improper tactics calculated to bring about an unjust result *favoring* the defendant, that would also be disqualifying. "The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger*, 295 U.S. at 88. Based on the facts of this case, however, no reasonable person would conclude that the prosecutors would improperly favor the defendant in the criminal case to obtain a more favorable disposition of the civil case. Moreover, the civil case is being handled by an entirely different division of the Department of Justice. Notably, the U.S. Attorney, who stands in the shoes of the United States for the purpose of D.C. Rule of Professional Conduct 1.7, has waived any potential conflict arising from this very hypothetical possibility.

More importantly, notwithstanding the defendant's hyperbolic language, the conduct in which he alleges the prosecutors will engage is not improper. Certainly, the assigned AUSAs will vigorously present their case demonstrating the defendant committed fraud, including "discrediting" the defendant by impeaching any false statements he makes and showing his biases. But that is their duty irrespective of the defendant's civil suit. *See United States v. Berger*, 295 U.S. 78, 88 (1935) ("[The United States Attorney] may prosecute with earnestness and vigor—indeed, he should do so"); *Marshall*, 446 U.S. at 248 ("Prosecutors need not be entirely "neutral and detached," cf. *Ward v. Village of Monroeville,* 409 U.S., at 62, 93 S.Ct., at 84. In an adversary system, they are necessarily permitted to be zealous in their enforcement of the law."); D.C. Rule of Prof'l Conduct R. 1.3 ("A lawyer shall represent a client zealously and diligently within the bounds of the law"). If a jury then finds the government has proved its case beyond a reasonable doubt, the defendant will indeed become a "convicted felon" by the outcome of this proceeding. But there is no evidence, and the defendant has offered no evidence, that the prosecutors intend to employ improper methods calculated to produce a wrongful conviction.

With respect to his final allegation that the prosecutors will "silence him," the defendant fails to even explain how the prosecutors even could prohibit him from testifying, much less that they would do so by improper means.

Notably, the defendant was unable to identify a single case with comparable facts in which a prosecutor was disqualified for an appearance of impropriety. The cases the defendant cites for the notion that any appearance of bias requires disqualification are inapposite because they set forth the standard for appearances applicable to judicial officers, not prosecutors. *Williams v. Pennsylvania*, 579 U.S. 1, 15 (2016); *In re Murchison*, 349 U.S. 133, 136 (1955). As noted above, prosecutors are required to be zealous advocates, whereas "officials performing judicial or quasi-

judicial functions" are subject to "strict requirements of neutrality." *Jericho*, 446 U.S. at 248-50. Accordingly, the standards for determining whether a conflict exists for a prosecutor thus requires a "stronger showing" than a judge. *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 811 (1987).

The cases the defendant cites involving disqualification of prosecutors are likewise distinguishable. In *Vuitton*, the Supreme Court found a significant appearance of impropriety because private attorneys for the plaintiff were appointed by the court to prosecute the civil defendants for criminal contempt, creating a situation where the private adversary was essentially prosecuting their own civil case as a criminal matter. This gave the appearance that the prosecutor was motivated by private interest, not public justice. 481 U.S. at 805. But there is no evidence here that the prosecutors are using the criminal case to further the government's defense in the civil liability case, and there is no reason to believe that they even could.

In *Roman v. State*, a Georgia state case cited by the defendant, the Court first recognized the general rule that "an appearance of impropriety generally is **not** enough to support disqualification." 373 Ga. App. 863, 873, 910 S.E.2d 609, 616 (2024) (emphasis added). The Court then found that the facts presented constituted the "rare case" in which disqualification was mandated because of a "significant" appearance of impropriety. *Id.*, 373 Ga. App. at 874, 910 S.E.2d at 617. That case stemmed from the prosecutor's romantic relationship with a special prosecutor she hired, leading to claims of personal financial benefit and bias in her exercise of pretrial discretion about who to prosecute and what charges to bring. Here, the prosecutors have no pecuniary interest in either the civil case or the criminal case, so there is no personal financial benefit at issue. Moreover, the conduct giving rise to the civil case occurred well after the USAO-

DC decided what charges to present to the grand jury, so it is not even possible that the civil case influenced any charging decisions. Accordingly, that case is completely distinguishable.

In *Battle v. State*, another Georgia state case cited by the defendant, the Court observed that the appearance of impropriety from a prosecutor's close personal relationship with the victim may be grounds for disqualification. 301 Ga. 694, 698, 804 S.E.2d 46, 51 (2017). But there is no allegation here that the prosecutors have a close relationship with a victim, so that case is also inapposite.

In *United States v. Dyess*, "the lead AUSA who prosecuted this case also managed case agents and witnesses who allegedly (and by their own admissions) stole drug proceeds, suborned perjury, lied under oath, and tampered with witnesses." 231 F. Supp. 2d 493, 495 (S.D.W. Va. 2002). Moreover, others in that U.S. Attorney's Office worked with the officers whose conduct was relevant on many drug investigations over an extended period of time, and the office had a "particularly close" working relationship with one of those officers. *Id.* at 497.

The first issue the Court observed in *Dyess* was that the assigned prosecutor's testimony was likely to be necessary to resolve contested issues in post-conviction proceedings concerning massive *Brady* violations, presenting a conflict under ABA and W. Va R. Prof'l Conduct 3.7 and related case law holding that an actual conflict of interest exists when an attorney is faced with the possibility of testifying about material issues in a case where he is also an advocate. *Dyess*, 231 F. Supp. 2d at 495-96. The second issue the Court observed in *Dyess* was that the interest of the U.S. Attorney's Office and that of the sovereign government appeared unaligned, in that revelation of wrongdoing by that prosecutor (as well as other AUSAs who might be called as witnesses) was likely to cause reputational injury to their office and its agents, constituting a breach of ABA and W. Va R. Prof'l Conduct 1.7(b) (prohibiting an attorney from representing a client if such

representation was materially limited by the lawyer's own interests). *Dyess*, 231 F. Supp. 2d at 497.

*Dyess* is wholly distinguishable because there is no likelihood that any of the assigned prosecutors will be required to testify at the criminal trial, as none of the allegations in the civil lawsuit are remotely relevant to the trial. (In this regard, the defendant has correctly not suggested that evidence about that lawsuit will be admissible at trial.) The fact that the prosecutors might be called to testify in the *civil* case does not raise any of the issues that *Dyess* addressed. Notably, that same possibility was present in *Heldt* and was not found to present any apparent conflict of interest.

The defendant's reliance on 5 C.F.R. § 2635.101(b)(14) is also misplaced. That provision of The Standards of Ethical Conduct for Executive Branch Employees sets forth the basic principle that federal employees must "endeavor to avoid any actions creating the appearance that they are violating the law or the ethical standards set forth in this part." *Id.* As set forth therein, the standard for determining whether particular circumstances create an appearance that the law or these standards have been violated is "the perspective of a reasonable person with knowledge of the relevant facts." *Id.* For the reasons elaborated above, a reasonable person with knowledge of the relevant facts would not question the impartiality of USAO-DC or the assigned prosecutors.

The provisions of 5 C.F.R. § 2635.502, which the defendant did not cite, explain how to identify and resolve whether a reasonable person would question the employee's impartiality. As an initial matter, that provision lists concrete examples of conflicts that are all wholly inapplicable here. *Id.* Further, the regulation explains that employees may seek the assistance of their agency designee to determine if a reasonable person would question the employee's impartiality. *Id.* Consistent therewith, after the defense sent an email on December 22, 2025, requesting the USAO-DC to recuse itself from further participation in this case, the prosecutors consulted with the

14

appropriate agency official, who also determined that the issues here do not present a conflict of interest or the appearance of a conflict of interest.

III.    **Conclusion**

At bottom, as the D.C. Circuit recognizes, criminal defendants simply cannot be permitted to disqualify prosecutors who may be called as witnesses in a civil action against the United States based on acts taken by the prosecutors in their official capacity. *Cf. Heldt*, 668 F.2d at 1276 ("a criminal defendant cannot routinely remove prosecutors he dislikes, or fears, by suing them"). Such a result would fundamentally disrupt the justice system, encouraging the filing of frivolous disqualification motions, such as here, and permitting defendants to "exert unwarranted influence in the government's choice of its prosecuting attorney," *Id.* at 1277 n. 82 (internal quotation marks and citations omitted).

For the foregoing reasons, the defendant's motion should be denied in its entirety. Further, the government requests the Court prohibit the defendant from eliciting any evidence or making any argument concerning the civil lawsuit or the facts giving rise thereto, as such matters are wholly irrelevant to the criminal trial.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:    _____/s/ *Emily A. Miller*_____
EMILY A. MILLER (D.C. Bar No. 462077)
Assistant United States Attorney
United States Attorney's Office
District of Columbia
601 D Street NW
Washington, DC 20530
Office: (202) 252-6988

15